IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN HANGARTER, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>THE PAUL REVERE LIFE INSURANCE CO., UNUMPROVIDENT CORP., JOHN GARAMENDI, California Insurance Commissioner, and DOES 1–50,<br><br>    Defendants.<br>_____ / | No. C 05-04558 WHA<br><br>**ORDER (1) GRANTING MOTION FOR REMAND, (2) GRANTING REQUEST FOR JUDICIAL NOTICE and (3) DENYING MOTION FOR STAY** |

**INTRODUCTION**

In this action alleging improper claims practices by insurers, plaintiff Joan Hangarter has moved to remand the case to state court. Defendants The Paul Revere Life Insurance Co. and the UnumProvident Corp. oppose the motion. Defendant John Garamendi, California's insurance commissioner, did not join in the removal and has not taken a position on remand, service not having been effected on him before the hearing. The district court does not have diversity jurisdiction for two reasons: (1) Commissioner Garamendi is a "primary defendant" and a state official against whom relief is likely to be barred and (2) there is no complete diversity between the parties. The corporate defendants advance no other basis for federal jurisdiction. The motion to remand therefore is **GRANTED**.

**STATEMENT**

Plaintiff brought this action in state court alleging that the corporate defendants unlawfully accepted premiums on disability-insurance policies, never intending to pay benefits, and then systematically denied valid claims. In her eighth cause of action, she also alleges that Commissioner Garamendi has not fulfilled his statutory duties to prevent the sale of misleading or unsound policies. She petitioned for a writ of mandamus ordering the Commissioner to revoke, rescind or reform the policies, to clarify two issues in a settlement between him and the corporate defendants and to acknowledge that California courts may judicially notice the settlement agreement (First Am. Class Action Compl. ¶¶ 84–93, *Hangarter v. Paul Revere Life Ins. Co.*, CGC-05-446073 (Super. Ct. filed Oct. 28, 2005), Notice of Removal of Action to Fed. Ct. ¶ 2, Exh. B). The corporate defendants removed the case on November 8, 2005, claiming the district court had diversity jurisdiction.

**ANALYSIS**

Congress enacted the Class Action Fairness Act of 2005 to provide "for Federal court jurisdiction of interstate cases of national importance under diversity jurisdiction." Pub. L. No. 109-2, Section 2(b)(2). There already had been federal jurisdiction over many such cases. The Act, however, expanded that jurisdiction. One way was to allow removal of class actions to federal court even if there were not complete diversity. *See* 28 U.S.C. 1332(d)(2).[*]

The Act nevertheless carved out exceptions to this expanded federal jurisdiction. For example, district courts have no jurisdiction over class actions in which the "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief . . . ." Section 1332(d)(5)(A). "Primary defendant" is not defined anywhere in the United States Code, nor in any judicial decision. Unless states consent to be sued, their sovereignty immunizes them and their officials from lawsuits. U.S. Constitution, amend. XI; *Hans v. Louisiana*, 134 U.S. 1, 20–21 (1890).

---

[*] Plaintiff requested judicial notice of an order by District Judge Phyllis Hamilton, and of a report about the corporate defendants in this case that was prepared for state-government officials. These items and the unopposed request for judicial notice meet the requirements of Federal Rule of Evidence 201. This Court therefore takes judicial notice of them.

2

The decision over whether to remand the instant case turns largely on whether or not the Commissioner is a "primary defendant." If so, all agree that the case was not properly removed.

The corporate defendants view the Commissioner as a bit player in this lawsuit because they stand to pay out millions of dollars although plaintiff seeks no damages from the Commissioner. He therefore is not a "primary defendant," the insurers claim. Alternatively, one can look at the Commissioner as a primary defendant because significant relief is sought against him. He also may be seen as a primary defendant because, as to the eighth cause of action, he is the only defendant who could possibly provide the relief plaintiff seeks. Furthermore, the Commissioner might be considered "primary" simply because he does not fall within ostensibly "secondary" categories of defendants, such as third-party defendants and relatively poor defendants from whom relief is sought only in the alternative to damages paid by a rich corporate defendant.

The corporate defendants here claim that the Commissioner is not a primary defendant because the "only" forms of relief sought from him are "clarifications," "acknowledgments" and reformation of policies. This argument ignores plaintiff's prayer that the court order the Commissioner to revoke or rescind policies. It minimizes, without explanation, the relief sought from the Commissioner. Corporate defendants also claim the Commissioner is not a primary defendant because he is not the "original cause of any supposed harm" and because there is no request that he pay damages (Opp. 8). The Commissioner is, however, arguably a but-for cause of the supposed harm to California consumers because his office approved the allegedly illusory policies and allowed them to continue being sold in California. Furthermore, injunctive relief is not necessarily inferior to damages. The fact that only injunctive relief is sought against the Commissioner is not dispositive of whether or not he is a "primary defendant."

Corporate defendants seek to burnish their argument by invoking the Senate Judiciary Committee report on the Class Action Fairness Act. *See* S. Rep. 109-14 at 42–43 (2005). That report is of dubious value as an interpretive aid. It was issued ten days *after* the president signed the bill into law. There is thus no reason to think it played any role in legislators'

3

1 interpretation of the bill, their decisions about whether to support it or the president's
2 conclusion that he should sign it.

3 The report states that the purpose of the "state-action exemption" was to "prevent states,
4 state officials, or other governmental entities from dodging legitimate claims by removing class
5 actions to federal court and then arguing that the federal courts are constitutionally prohibited
6 from granting the requested relief." *Id.* at 42. The statute itself did not limit application of the
7 state-action exception to cases in which a state entity removed the action. The exception
8 applies whether or not the state actor joined in removal. The fact that the Commissioner did not
9 join in the removal here therefore does not influence the analysis of whether he is a primary
10 defendant.

11 The committee next stated said "[f]ederal courts should proceed cautiously before
12 declining federal jurisdiction under the . . . 'state action' case exception." *Ibid.* This
13 admonition is well-taken by this Court but it provides little guidance on statutory construction.

14 The committee later warned that "this provision should not become a subterfuge for
15 avoiding federal jurisdiction" and, in particular, "plaintiffs should not be permitted to name
16 state entities as defendants as a mechanism to avoid federal jurisdiction over class actions that
17 largely target non-governmental defendants." *Ibid.* This suggests that a state defendant could
18 not trigger this exception if it were a collateral or secondary target of the lawsuit. In this case,
19 the Commissioner is not a *secondary* target with regard to any of plaintiff's causes of action.
20 He is not a target *at all* with regard to the first seven causes of action. He is, however, the *only*
21 target of the eighth cause of action and, therefore, a "primary defendant" as to that claim.

22 The committee defined "primary defendants" are those "that would be expected to incur
23 most of the loss if liability is found," and the term "should include any person who has
24 substantial exposure to significant portions of the proposed class in the action . . . ." *Id.* at 43.
25 Although the Commissioner will incur no damages liability, he would bear the burden of any
26 mandamus or quasi-mandamus relief. Finally, the Commissioner meets the last criteria because
27 he has "substantial" mandamus exposure to the entire class, not just "significant portions" of it.
28

4

In summary, the Commissioner is a primary defendant because the relief sought from him is substantial in its own light, because he is the only defendant potentially liable on the eighth cause of action and because he would be liable to the entire class. The state-action exception therefore applies. There is no diversity jurisdiction under 18 U.S.C. 1332(d)(2).

Even if the Court treated this as close call, the removal and diversity-jurisdiction statutes must be strictly construed in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 101, 108–09 (1941) (remand statute); *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942) (diversity-jurisdiction). This settled law was not altered by the Senate Judiciary Committee's post-enactment statement that the burden of proof on remand issues should be with the party seeking to avoid federal jurisdiction. *See* S. Rep. No. 109-14 at 44. This part of the legislative history stands by itself, untethered to any statutory provision. Such naked expressions of intent have no legal effect. *Pierce v. Underwood*, 487 U.S. 552, 566–68 (1988). The report represents nothing more than the view of thirteen members of the Senate Judiciary Committee.

As Judge Frank Easterbrook noted, that group of senators did not have the power to change the long-established remand rule simply by making "a forceful declaration in a report." *See Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005). Absent a judicial reversal, the only way to change such a rule is by bicameral congressional approval plus either the president's approval or a veto-overriding vote of both houses. *Brill* is the only Court of Appeals decision on this issue and this Court finds it persuasive. In addition, the fact that the report was issued after the bill had become law further undercuts its ability to persuade the Court that the rule of strict remand construction has been weakened.

This Court does not have jurisdiction over the case under any other provision of Section 1332 because there is no complete diversity of citizenship. Complete diversity of citizenship exists only if *each* plaintiff would have the right to sue *each* defendant separately under Section 1332. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1986). Plaintiff would not have the right to sue the Commissioner under Section 1332. She has no such right because a citizen of a state, such as herself, may only sue under the diversity statute if the defendant is a citizen of a different state, or a citizen or subject of a foreign nation. *See* Section

1332(a)(1)–(3). The Commissioner is not a "citizen" because the alter egos of states are never considered citizens under Section 1332. *See State Highway Comm'n v. Utah Constr. Co.*, 278 U.S. 194, 199–200 (1929). No district court therefore would have diversity jurisdiction to hear a case brought by plaintiff against the Commissioner.

## CONCLUSION

For the reasons stated above, the district court does not have jurisdiction to hear the instant case. The motion to remand therefore is **GRANTED**. In light of the foregoing, the motion to stay is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: January 26, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

6